

**IT IS ORDERED as set forth below:**

**Date: July 27, 2017**

_____

**Barbara Ellis-Monro**
**U.S. Bankruptcy Court Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| IN RE: | |
| PHILLIP RUSSELL WILBUR, JR., | CASE NO. 16-67262-BEM |
| Debtor. | |
| | CHAPTER 7 |
| LANDA CROWDER, STANLEY CROWDER, and AMY RILEY, | |
| Plaintiffs, | |
| v. | ADVERSARY PROCEEDING NO. 17-5044-BEM |
| PHILLIP RUSSELL WILBUR, JR., | |
| Defendant. | |

## ORDER GRANTING IN PART AND DENYING IN PART
## DEFENDANT'S MOTION TO DISMISS

This matter comes before the Court on Defendant's Answer and Motion to

Dismiss, styled as "Motion for Default JudgmentDefendant's [sic] Answer to Complaint

Objecting to Discharge and Motion for Summary Judgment," (the "Motion to Dismiss" or "Motion") [Doc. 8] and Plaintiffs' Response in Opposition to Defendant's Motion to Dismiss (the "Response"). [Doc. 12]. The Motion to Dismiss seeks to dismiss Counts I, II, III, and VI of Plaintiffs' complaint (the "Complaint") for failure to state a claim upon which relief may be granted. Counts I, II, and III allege the attorney fees in the amount of $28,639.98 awarded to Plaintiffs in a state court lawsuit are nondischargeable under 11 U.S.C. § 523(a)(5), (a)(15), and (a)(6), respectively.[1] Count VI objects to Defendant's discharge. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I), (J). Having considered the pleadings and legal authorities, the Court will grant the Motion to Dismiss as to Counts I, II, and partially as to Count VI, and will deny the Motion to Dismiss as to Count III and partially as to Count VI.

## I. MOTION TO DISMISS STANDARD

Fed. R. Civ. P. 8(a)(2), made applicable in adversary proceedings by Fed. R. Bankr. P. 7008, sets forth a liberal pleading standard that requires the complaint contain only a "short and plain statement of the claim showing that that the pleader is entitled to relief[.]" To survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), made applicable in adversary proceedings by Fed. R. Bankr. P. 7012(b), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' … A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (citations omitted). Although the complaint "does not need detailed factual allegations" to survive a motion to dismiss, it "requires more than labels and conclusions[;] a formulaic recitation of the elements of a cause of action

---

[1] Counts IV and V relate to a separate action for modification of visitation and contempt. Defendant does not seek dismissal of these two counts.

will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Id.*, 127 S. Ct. at 1965. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949.

## II. FACTUAL ALLEGATIONS APPLICABLE TO COUNTS I, II, III, AND VI OF THE COMPLAINT

Phillip Russell Wilbur, Jr. ("Defendant") is the former husband of Plaintiff Amy Riley ("Ms. Riley"). [Complaint ¶ 4]. Plaintiffs Stanley and Landa Crowder ("Mr. Crowder" and "Ms. Crowder" and with Ms. Riley "Plaintiffs") are the parents of Ms. Riley and are Defendant's former in-laws. [*Id.* ¶¶ 5, 6]. Defendant and Ms. Riley were divorced by final judgment and decree entered on May 17, 2013 in the Superior Court of Paulding County, Georgia. [*Id.* ¶ 7].

### A. Defendant's Legal Actions Against Plaintiffs

On August 30, 2013, Defendant filed a complaint for damages, attorney fees, and a preliminary injunction against Plaintiffs in the Superior Court of Paulding County, alleging libel per se; slander per se; tortious interference with contractual relations, business relations, or potential business relations; RICO violations; intentional infliction of emotional distress; and false light (the "Defamation Complaint" or the "Defamation Litigation"). [*Id.* ¶ 8 and Ex. A]. The Defamation Complaint alleged that Plaintiffs damaged Defendant's reputation by contacting his employer and stating that he was using drugs. [*Id.* ¶ 9]. The Defamation Complaint also alleged Plaintiffs used Defendant's name to create a false profile on an internet sex site. [*Id.*]

On November 12, 2013, Defendant filed a motion for contempt citation in the Superior Court of Paulding County alleging Ms. Riley failed to allow Defendant visitation and communication with his minor children (the "Contempt Motion"). [*Id.* ¶ 10 and Ex. B]. On December 12, 2013, Defendant filed petitions for stalking temporary protective orders against

3

each Plaintiff in the Superior Court of Paulding County (the "TPO Petitions"). [*Id.* ¶¶ 11, 14, 17 and Ex. C, D, E]. The allegations in the TPO Petitions specifically refer to allegations in the Defamation Complaint. [*Id.* ¶¶ 12, 15, 18]. During a Rule 2004 examination, Defendant admitted the allegations in the TPO Petitions are intertwined with the allegations in the Contempt Motion and in the Defamation Complaint. [*Id.* ¶¶ 13, 16, 19].

On February 5, 2015, in the Defamation Litigation, the Superior Court of Paulding County entered an Order on Motion for Attorney's Fees & Expenses of Litigation in the amount of $28,639.98 in favor of Plaintiffs (the "Defamation Order").[2] [*Id.* ¶ 20 and Ex. F]. The Defamation Order initially awarded the fees to Plaintiffs' state court counsel but was later amended to award the fees to Plaintiffs, and fi fa's were filed accordingly. [*Id.* ¶¶ 20-24 and Ex. G, H, I, J]. The Defamation Order found that the allegations in Defendant's Defamation Complaint "lacked substantial justification" and that Defendant "asserted various claims which [he] knew to be false, solely for the purpose of harassing [Plaintiffs] and increasing litigation costs." [*Id.* ¶¶ 20, 55]. Defendant's actions were willful and caused malicious injury to Plaintiffs. [*Id.* ¶¶ 56, 57].

The attorney fees and expenses awarded in the Defamation Order arise out of actions directly related to the family relationship between the parties, the various complaints, motions, and petitions mentioned above, and the issues of custody and visitation addressed in the final decree of divorce. [*Id.* ¶¶ 44, 50]. The Defamation Order is owed to a former spouse or is recoverable on her behalf. [*Id.* ¶¶ 45, 51]. The Defamation Order is in the nature of alimony, maintenance, and support. [*Id.* ¶ 46]. The Defamation Order was established by the reasonable application of a divorce decree, property settlement, or an order of a count of record. [*Id.* ¶ 47]. The fees and expenses were incurred by Defendant in the course of a divorce or separation or in

---

[2] These fees are the subject of Counts I, II, and III of the Complaint.

connection with a separation agreement, divorce decree, or other order of a court of record. [*Id.* ¶ 52].

## B. The Bankruptcy Case

On September 30, 2016, Defendant filed a Chapter 7 bankruptcy petition and numerous schedules and sworn attestations. [*Id.* ¶ 27, 28]. On October 31, 2016, Plaintiffs filed a Motion for 2004 Examination that included a request for certain documents. [*Id.* ¶ 29; Case No. 16-67262 Doc. 19, Ex. A]. On November 3, 2016, the Court entered an order authorizing the examination. [*Id.* ¶ 30, Case No. 16-67262 Doc. 22]. The documents requested by Plaintiffs included: (1) copies of bank statements, canceled checks, and other financial records or documents of Defendant from any bank or financial institution for the four years prior to filing bankruptcy; (2) copies of all documentation reflecting or evidencing any income received from any source in the past four years; and (3) copies of all documentation reflecting or evidencing any loans made to Defendant by any person or entity, or any loan applications submitted by Defendant to any person or entity, for the four years prior to filing bankruptcy. [*Id.* ¶ 31].

As part of the 2004 examination, Defendant produced his 2013 income tax return, showing a total wage income of $19,112. [*Id.* ¶ 32 and Ex. L]. During the 2004 examination, Defendant acknowledged having received an additional $18,593.20 from his employer, but he claimed those funds were loan proceeds rather than income. [*Id.* ¶ 33]. At the time of the 2004 examination, on January 11, 2017, Defendant agreed to produce proof of the loans but has failed to do so. [*Id.* ¶ 34]. On November 11, 2016, Defendant amended his Schedule F to list his employer as a creditor with a debt of $47,000. [*Id.* ¶ 35].

According to his statement of financial affairs, Defendant earned $19,648 in 2016, $14,000 in 2015, and $30,000 in 2014. [*Id.* ¶ 36; Case No. 16-67262 Doc. 4]. Defendant failed to

produce complete bank records for the following time periods: January 2014 to November 2014;

May 2015 to December 2015; and January 2016 to May 2016. [*Id.* ¶¶ 37-39]. Defendant failed to

comply with a court order. [*Id.* ¶ 41]. Plaintiffs believe Defendant is hiding his true income. [*Id.*

¶ 40].

## III.  LEGAL ANALYSIS

### A.  Determination of Dischargeability Under 11 U.S.C. § 523(a)

Section 523(a) of the Bankruptcy Code provides that certain debts are excepted

from a Chapter 7 discharge, including debts:

> (5) for a domestic support obligation;
> (6) for willful and malicious injury by the debtor to another entity
> or to the property of another entity; [and]
> …
> (15) to a spouse, former spouse, or child of the debtor and not of
> the kind described in paragraph (5) that is incurred by the debtor in
> the course of a divorce or separation or in connection with a
> separation agreement, divorce decree or other order of a court of
> record, or a determination made in accordance with State or
> territorial law by a governmental unit[.]

11 U.S.C. § 523(a)(5), (6), (15). Count I of Plaintiffs' Complaint alleges that the $28,639.98

awarded in the Defamation Order is nondischargeable as a domestic support obligation ("DSO").

Count II of the Complaint alleges the attorney fees and expenses are nondischargeable as a non-

DSO that arose in connection with Defendant's divorce from Ms. Riley. Count III of the

Complaint alleges the attorney fees and expenses are the result of willful and malicious injury by

Defendant.

### 1. Domestic Support Obligation § 523(a)(5)

The Court first considers whether Plaintiffs have stated a claim that the attorney

fees awarded in the Defamation Order are nondischargeable as a DSO. A DSO is defined as a

6

debt

> (A) owed to or recoverable by—
>> (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
>> (ii) a governmental unit;
> (B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
> (C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of—
>> (i) a separation agreement, divorce decree, or property settlement agreement;
>> (ii) an order of a court of record; or
>> (iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and
> (D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

11 U.S.C. § 101(14A).

Plaintiffs argue that the attorney fees are a DSO because Defendant and Plaintiffs have been engaged in ongoing litigation and legal process since the divorce, including multiple contempt actions against Defendant, the TPO Petitions, Defendant's Contempt Motion, and the Defamation Litigation. Plaintiff further argues all the actions are interconnected, and the allegations contained in the TPO Petitions referred to the allegations in the Defamation Complaint, and Defendant admitted during his 2004 examination and in his Answer that the allegations in the Defamation Complaint and the TPO Petitions are intertwined. Plaintiff further argues the Defamation Complaint specifically alleges alienation from Defendant's minor children and interference with his relations with the minor children.

Defendant argues the fees are not a DSO because the Defamation Complaint was unrelated to the divorce but was instead filed to stop Plaintiffs' harassment of Defendant.

Defendant further argues the attorney fees were awarded under O.C.G.A. § 9-15-14[3] to punish Defendant rather than to provide support to Plaintiffs.

To state a claim under § 523(a)(5), Plaintiffs must allege sufficient facts to show the attorney fees and expenses are (1) recoverable by a spouse, former spouse, or child of Defendant; (2) in the nature of support; and (3) awarded under a settlement agreement, divorce decree, property agreement, or order of a court of record; and (4) not assigned, with some exceptions. Plaintiffs have attached a copy of the Defamation Order as modified that shows the attorney fees and expenses are recoverable by a former spouse and her parents.[4] However, Plaintiffs have not alleged facts to show the fees and expenses are in the nature of alimony, maintenance, or support of Ms. Riley.

In making this determination, the 11th Circuit has said "a court should look beyond the label the parties have given to a particular debt and determine whether the debt is actually in the nature of alimony or support." *Benson v. Benson (In re Benson)*, 441 Fed. Appx. 650, 651 (11th Cir. 2011) (citing *Cummings v. Cummings*, 244 F.3d 1263, 1265 (11th Cir. 2001)). Attorney fees awarded in litigation related to dissolution proceedings may be a DSO. *Strickland v. Shannon (In re Strickland)*, 90 F.3d 444, 447 (11th Cir. 1996). The 11th Circuit identified a non-exclusive list of factors for courts to consider when determining whether a debt arising in the context of a divorce agreement is in the nature of support.[5] Here, the amounts were attorney fees awarded outside of a divorce agreement, such that many of the *Benson* factors are

---

[3] O.C.G.A. § 9-15-14 authorizes the award of attorney fees and expenses for frivolous, groundless, and vexatious litigation, among other things.

[4] The Court need not and does not decide whether the fact that the debt is owed to a former spouse as well as a non-spouse is sufficient to satisfy the first requirement under § 523(a)(5).

[5] These factors include "(1) the agreement's language; (2) the parties' financial positions when the agreement was made; (3) the amount of the division; (4) whether the obligation ends upon death or remarriage of the beneficiary; (5) the frequency and number of payments; (6) whether the agreement waives other support rights; (7) whether the obligation can be modified or enforced in state court; and finally (8) how the obligation is treated for tax purposes." *Benson*, 441 Fed. Appx. at 651 (citing *In re McCollum*, 415 B.R. 625, 631 (Bankr. M.D. Ga. 2009)).

not applicable, nor are the *Benson* factors exclusive. Other relevant factors may include the nature of the underlying litigation, any indication in the language of the order that the fees were intended as support, and whether the court that awarded the fees considered the relative financial positions of the parties. *See Manz v. Palomino (In re Palomino)*, 355 B.R. 349, 356 (Bankr. S.D. Fla. 2006) (plaintiff's § 523(a)(5) claim with respect to attorney fees survived summary judgment when the fees "either arose directly in connection with a dispute over child support, or, are so difficult to distinguish that the fees could … be found to be integrally intertwined with support and maintenance issues …."); *Robinson v. Robinson (In re Robinson)*, 193 B.R. 367, 374 and n.4 (Bankr. N.D. Ga. 1996) (Drake, J.) (noting that courts consider the financial disparity between the parties, the nature of the underlying litigation, and whether an award of fees is inextricably intertwined with support litigation).

Turning to the debt at issue here, Plaintiff has not alleged nor does the Defamation Order indicate that the fees were awarded in a divorce or custody proceeding or in a proceeding to modify or enforce a prior divorce, custody, or support order. The Defamation Complaint itself did not request any relief from the provisions of the divorce decree and did not request any modification of support or custody arrangements. In addition, the fees are payable to all Plaintiffs and not solely to Ms. Riley. The fees were awarded pursuant to O.C.G.A. § 9-15-14 due to frivolous and abusive litigation. And, the Defamation Order contains "no hint … that the award was made to sustain financially or otherwise" Ms. Riley, and the superior court "did not evaluate the ability of either party to pay the costs of litigating" incurred by Plaintiffs. *Rackley v. Rackley (In re Rackley)*, 502 B.R. 615, 626 (Bankr. N.D. Ga. 2013) (Massey, J.). Taken together, these factors do not plausibly show or allow the Court to reasonably infer the fees were intended as support. The fact that the Defamation Complaint may have been based on incidents that

9

occurred during the course of Defendant's and Ms. Riley's estrangement and divorce does not mean that any fees awarded in subsequent litigation are in the nature of support when there is no indication in the Defamation Order that they were intended as support. Similarly, the fact that Defendant complained that Plaintiffs' actions interfered with his relationship with his children does not support a conclusion that the attorney fees were awarded as support.

The cases cited by Defendant in which debts were determined to be in the nature of support are distinguishable in that they all provided some factual basis to conclude that the amounts at issue were intended as support. *Strickland*, 90 F.3d at 447 (debt at issue was attorney fees awarded in a child support and custody dispute under a state statute that required consideration of "relative need and ability to pay"); *Brody v. Brody (In re Brody)*, 3 F.3d 35, 37-8 (2d Cir. 1993) (debt at issue was awarded in the separation agreement; the bankruptcy court credited the wife's testimony that it had been intended to supplement her income); *Krein v. Hanagan (In re Krein)*, 230 B.R. 379, 386 (Bankr. N.D. Iowa 1999) (debt at issue was obligation to pay joint credit card debt created by side agreements between the parties that were not included in the dissolution settlement documents but were created during the dissolution proceedings and prior to the divorce becoming final; the court concluded the side agreements reflected the parties' intent for the debtor "to assume the greater portion of the marital debt rather than pay alimony"); *Lakeman v. Weed (In re Weed)*, 479 B.R. 533, 544 (Bankr. D. Minn. 2012) (debt at issue was attorney fees and costs awarded in dispute between never-married parents over the wrongful removal of a child under the Hague Convention; the governing statute required an award of expenses unless clearly inappropriate; in reducing the award of fees, the court considered the parties' relative financial circumstances); *Berman v. Mobley (In re Mobley)*, 238 B.R. 486, 488 (Bankr. M.D. Fla. 1998) (debt at issue was a portion of the attorney fees incurred

10

by debtor's ex-wife during dissolution proceedings, which debtor was required to pay based on the relative financial positions of the parties); *Smallwood v. Finlayson (In re Finlayson)*, 217 B.R. 666, 669 (Bankr. S.D. Fla. 1998) (debt at issue was attorney fees incurred by ex-spouse in divorce action, which debtor was ordered to pay due to the disparity in the parties' incomes).

Plaintiffs here have not alleged and the Defamation Order does not show that (1) the award of attorney fees was in any way based on the relative financial needs of the parties; (2) the court awarding the fees intended them as support; or (3) the Defamation Litigation was seeking to modify the rights and obligations of the parties with respect to support. Accordingly, the Court cannot conclude the Plaintiffs have alleged sufficient facts to plausibly state a claim under § 523(a)(5) with respect to the fees awarded in the Defamation Order. Therefore, Defendant is entitled to dismissal of Count I of the Complaint.

**2. Non-DSO Debt Incurred in Connection With the Divorce: § 523(a)(15)**

Having concluded Plaintiffs failed to allege that the attorney fees awarded in the Defamation Order constitue a DSO, the Court now turns to the question of whether Plaintiffs have stated a claim that the fees are a non-DSO incurred in connection with the divorce. Plaintiffs argue that § 523(a)(15) virtually eliminates the discharge of any debt that is related to a divorce or other domestic action and that because Defendant's own admissions indicate the Defamation Litigation is intertwined with other matters related to the divorce proceeding, the fees awarded in the Defamation Order are non-dischargeable.[6] Defendant argues that the attorney fees did not arise as the result of Defendant and Ms. Riley's divorce. Rather, the Defamation

---

[6] Plaintiffs also contend that exhibits attached to the Motion to Dismiss are not relevant to the determination under § 523(a)(15). Given that the exhibits were not referenced in or otherwise integral to Plaintiffs' Complaint, the Court gives them no consideration on the Motion to Dismiss.

Complaint was filed by Defendant to stop Plaintiffs' harassment, including efforts to interfere with Defendant's employment.

To state a claim under § 523(a)(15), Plaintiffs must allege facts showing "(1) [t]he debt in question is to a spouse, former spouse or child of the debtor; (2) [t]he debt is not a support obligation of the type described in section 523(a)(5); and (3) [t]he obligation was incurred in a separation agreement, divorce decree or other order of a court of record." Collier on Bankruptcy ¶ 523.23 (16th ed.).

As noted above, the debt is owed to a former spouse, as well as to the parents of the former spouse, and it is not in the nature of support. The question then, is whether it was incurred in connection with a separation agreement, divorce decree, or other order of a court of record. Fees awarded for litigation misconduct are not excluded from the scope of § 523(a)(15), *see Tritt v. Tritt (In re Tritt)*, No. 12-42446, AP No. 12-4186, 2014 WL 1347763, at *8 (Bankr. E.D. Texas April 4, 2014) (collecting cases); *Howerton v. Howerton (In re Howerton)*, No. 12–10613, AP No. 12–01055, 2013 WL 4505368, *2 (Bankr. N.D. Ga. July 19, 2013) (Drake, J.) (fees awarded under O.C.G.A. 9-15-14 in a proceeding to modify child support and set aside divorce agreement were nondischargeable). However, they must arise under the divorce agreement or an order issued in connection with the divorce.

Here, the Complaint alleges that the Defamation Litigation is intertwined with other proceedings related to the divorce and that Defendant has admitted the connection in a 2004 examination. However, the fees were not awarded as part of the divorce proceedings or in an action arising under domestic relations law, nor were they awarded in a proceeding to enforce any of Defendant's or Ms. Riley's obligations under the divorce agreement or to alter any of their obligations under the divorce agreement. The fact that Defendant and Ms. Riley were once

married does not mean that any future disputes between them are related to their divorce, even if they are based on actions taken during the course of the divorce. Similarly, the fact that Defendant and Ms. Riley were once married does not mean that any dispute between Defendant and the Crowders are related to the divorce.

While Plaintiffs argue the Defamation Order is connected to the divorce based on common underlying facts, § 523(a)(15) cannot be read to apply to any and all disputes between former spouses, such as the tort claims advanced in the Defamation Litigation, otherwise the limitations within § 523(a)(15) "would be swallowed by a generality." *Weed*, 479 B.R. at 538. The court in *Weed* explained:

> Without much of a stretch, [such a] construction would except from discharge a debt on account of a business loan made by an individual to an ex-spouse long after they were divorced, merely because that debt had been reduced to judgment. That would be far beyond the legislative intent otherwise to be gleaned from the subject matter specifically identified in the statute. It would also go against the thrust of the section's cross-reference to another Code section that is concerned *only* with debts arising under the statutory law of domestic relations. In their joint operation, § 523(a)(15) begins *after* § 523(a)(5) operates; and then § 523(a)(15) makes nondischargeable all *other* debts running between spouses or ex-spouses that were created under divorce decrees, decrees of separate maintenance, or any other court judgment that parses out the consequences of the breakdown of a marital relationship.
>
> This reading of § 523(a)(15) is also supported by the doctrine of *ejusdem generis*. Under this canon of statutory construction, general words at the end of a statutory enumeration are construed to embrace only objects similar in nature to those identified by the specific words that fall earlier in the statute's enumeration. …
>
> *Ejusdem generis* dictates that the general class of debt under § 523(a)(15) run from the debtor to the debtor's spouse, former spouse, or child, and that it have been created under a court's decision in a proceeding for divorce or legal separation, or in some other sort of proceeding governed by the state law of *domestic relations* if the proceeding was not among those more common ones.

13

*Id.* at 538-39 (emphasis in original) (citations and footnotes omitted); *see also Tracy v. Tracy (In re Tracy)*, No. 06-40044, AP No. 06-8040, 2007 WL 420252, at *2 (Bankr. D. Idaho Feb. 2, 2007) (rejecting the plaintiff's argument that § 523(a)(15) renders nondischargeable a debt to a former spouse arising under *any* court order). The analysis of the court in *Weed* is supported by the legislative history of § 523(a)(15). The section was added to the Code by the Bankruptcy Reform Act of 1994. The legislative history indicates it was intended to prevent debtors from discharging marital obligations awarded in lieu of alimony, such as property settlements and payment of marital debts, describing it as:

> a new exception to discharge for some debts arising out a divorce decree or separation agreement that are not in the nature of alimony, maintenance or support. In some instances, divorcing spouses have agreed to make payments of marital debts, holding the other spouse harmless from those debts, in exchange for a reduction in alimony payments. In other cases, spouses have agreed to lower alimony based on a larger property settlement. If such "hold harmless" and property settlement obligations are not found to be in the nature of alimony, maintenance, or support, they are dischargeable under current law. The nondebtor spouse may be saddled with substantial debt and little or no alimony or support.

Bankruptcy Reform Act of 1994, H.R. Rep. 103-835, at 54 (1994), *reprinted in* 1994 U.S.C.C.A.N 3340, 3363. The section has evolved over time. When initially enacted, it was subject to equitable defenses based on the debtor's ability to pay and the balance of harms, and it was listed in § 523(c), such that it was subject to a deadline for filing a complaint. *See* 1-6 Collier Family Law and the Bankruptcy Code ¶ 607A[1]; Bankruptcy Reform Act of 1994, Pub. L. 103-394, § 304, 108 Stat 4106, 108 Stat. 2135 (1994). In 2005, the Code was amended to remove the equitable defenses and the time bar. *Id.*; Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, § 215, 119 Stat 23 (2005). But the amendments did not otherwise enlarge the scope of § 523(a)(15). "[T]here is nothing to suggest Congress

intended to expand the exception to include debts owed by a debtor to a former spouse that were not incurred in the course of dissolution of their marital relationship. *Tracy*, 2007 WL 420252, at *2.

The cases cited by Plaintiffs do not support their contention that the Defamation Litigation is somehow connected to the divorce decree or other order of a court of record, as they all involve a divorce agreement itself or an order to enforce or modify a divorce or custody agreement. *Howerton*, 2013 WL 4505368 at *2) (debt was incurred in proceedings to modify child support and set aside the divorce decree); *Koscielski v. Koscielski (In re Koscielski)*, No. 10–B–72304, AP No. 10–A–96056, 2011 WL 338634, at *1 (Bankr. N.D. Ill. Jan. 31, 2011) (debt arose out of contempt action filed due to debtor's failure to comply with the marital settlement agreement); *Stoltz v. Cavagnetto (In re Cavagnetto)*, No. 09 B 49694, AP No. 10 A 00482, 2012 WL 6585560, at *2-3 (Bankr. N.D. Ill. Dec. 11, 2012) (debt arose as a sanction in a quiet title lawsuit, which was consolidated with the divorce proceeding, and ultimately found to be baseless)[7]; *Zimmerman v. Hying (In re Hying)*, 477 B.R. 731, 732 (Bankr. E.D. Wis. 2012) (debt arose as sanctions awarded by different courts in contempt proceedings involving the care, custody, and welfare of the parties' minor child).

By contrast, in *Tracy*, the marital residence was awarded to the husband. The debtor-wife continued to live there after the divorce as a tenant. When she vacated residence, she took items from the home that had been awarded to the husband in the divorce and withdrew money from a joint bank account that had not been addressed in the divorce proceedings. 2007

---

[7] On appeal, the district court affirmed that the debt was nondischargeable as having been incurred in connection with a divorce proceeding, noting that the state court "consolidated the cases because Cavagnetto's suit to quiet title 'involves a substantial asset of the parties which is either a non-marital or marital asset to be assigned by the court at the time of dissolution.'" *Cavagnetto v. Stoltz*, No. 13 C 3805, 2013 WL 5926124, at *4 (N.D. Ill. Nov. 4, 2013) (affirming in part and reversing in part). In so stating, the court rejected Cavagnetto's argument that the consolidation was "pure happenstance." *Id.*

WL 420252, at *1. The husband and his new wife obtained a state court judgment against the debtor for the value of the items. *Id.* In the debtor's bankruptcy case, they sought a judgment of nondischargeability under § 523(a)(15). *Id.* at *2. Although the debt technically arose in a dispute over property rights among the parties, the court concluded it was not excepted from discharge. *Id.* at *3. First, the dispute arose more than a year after the divorce. *Id.* Second, the rental arrangement "created a new, landlord/tenant relationship between the parties. … None of the[] claims gave rise to debts owed by Defendant to Plaintiff arising from their prior status as spouses." *Id.* Because the debt "arose after the divorce was complete based upon the subsequent dealings between the parties unrelated to the dissolution of the parties' marriage," the debts were not covered by § 523(a)(15). *Id. See also Crane v. Candela (In re Candela)*, No. 11-19030, AP No. 11-2066, 2011 WL 6010245 (Bankr. D.N.J. Nov. 30, 2011) (attorney fees awarded in a post-divorce domestic violence action were not covered by § 523(a)(15)). "Nothing in section 523(a)(15) suggests that nondischargeability should be applied to all debts that may arise out of family court actions between former spouses. … [T]he statute is generally concerned with debts attending marital and parental relations, chiefly, the economic aspects of those relationships." *Candela*, 2011 WL 6010245 at *5.

Plaintiffs' Complaint does not allege and the Defamation Complaint and Order do not show that the Defamation Litigation was undertaken as part of the divorce proceeding or to enforce or modify any rights or obligations of the parties arising out the divorce proceeding or other domestic relations law. It is not based on the parties' status as former spouses, nor does it address the economic aspects of their spousal relationship. Accordingly, Plaintiff has failed to allege facts sufficient to show the attorney fees are connected to the divorce. Therefore, Defendant is entitled to dismissal of Count II of the Complaint.

### 3. Willful and Malicious Injury: § 523(a)(6)

To state a claim for relief under § 523(a)(6), Plaintiffs must allege facts showing their debt is the result of a willful and malicious injury to their person or property. An injury is willful when the debtor "commits an intentional act the purpose of which is to cause injury or which is substantially certain to cause injury." *Maxfield v. Jennings* (*In re Jennings*), 670 F.3d 1329, 1334 (11th Cir. 2012) (internal quotation marks and citations omitted); *see also Kawaauhau v. Geiger*, 523 U.S. 57, 61-62, 118 S. Ct. 974, 977 (1998) (the debtor must intend the injury, not just the act that results in injury). A malicious injury is one that is "wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will." *Hope v. Walker* (*In re Walker*), 48 F.3d 1161, 1164 (11th Cir. 1995) (internal quotation marks and citations omitted). "Malice may be implied or constructive" and does not require specific intent to cause harm. *Id.*

Plaintiffs argue the attorney fees were incurred as the result of willful and malicious injury because the state court found that the Defamation Complaint "lacked substantial justification. [Defendant] asserted various claims which [Defendant] knew to be false, solely for the purpose of harassing [Plaintiffs]." [Doc. 12 at 7]. Plaintiffs further contend they have stated a claim for relief because the attorney fees were awarded pursuant to O.C.G.A. § 9-15-14 for frivolous or abusive litigation.

Defendant argues the Complaint is deficient because it does not include allegations that would support a finding that Defendant intended Plaintiffs to incur the attorney fees and knew with a virtual certainty that they would incur the expense. Defendant further argues that the Complaint relies on an out-of-court statement regarding the allegations and their

17

merit, which are inadmissible hearsay. Furthermore, there were no findings as to the actual

merits of the Defamation Complaint because it was dismissed.

With respect to Defendant's argument that the Complaint relies on hearsay,[8] such

considerations are not applicable on a motion to dismiss for failure to state a claim. To the extent

the Defamation Order and other documents attached to the Complaint "were incorporated by

reference in the complaint, the documents are not evidence, but allegations" subject to the

assumption of truth. *Gerritsen v. Warner Bros. Entertainment, Inc.*, 116 F. Supp.3d 1104, 1119

(C.D. Calif. 2015). The Complaint must provide "enough factual matter (taken as true) to …

raise a reasonable expectation that discovery will reveal evidence" to support the claim.

*Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965. "And, of course, a well-pleaded complaint may

proceed even if it strikes a savvy judge that *actual proof* of those facts is improbable, and 'that a

recovery is very remote and unlikely.'" *Id.* (emphasis added). Thus, Plaintiffs do not yet need to

show they can prove their allegations with admissible evidence. *See Develder v. Hirschler*, No.

2:09-cv-1803, 2016 WL 319219, at *3 (E.D. Calif. Jan. 27, 2016).

Here, Plaintiffs have alleged the fees were awarded because the Defamation

Complaint lacked substantial justification, included claims Defendant knew to be false, and was

brought to harass Plaintiffs and increase litigation costs. These allegations are sufficient to show

Defendant filed the Defamation Complaint to harm Plaintiffs or did so with substantial certainty

that they would be harmed, given that it placed Plaintiffs in the position of having to defend a

frivolous lawsuit. Furthermore, the allegation that Defendant knew his claims were false is

sufficient to plausibly show Defendant acted without just cause, such that his conduct was

---

[8] Defendant's argument finds some support in the case law, in that findings of fact in a prior order that are offered
for their truth may be hearsay. *See U.S. v. Stinson*, 647 F.3d 1196, 1210 (9th Cir. 2011); *U.S. v. Jones*, 29 F.3d 1549,
1554 (11th Cir. 1994).

malicious. Accordingly, Plaintiffs' Complaint sufficiently states a claim for willful and malicious injury. Therefore, Defendant is not entitled to dismissal of Count III of the Complaint.

### B.  Denial of Discharge Under 11 U.S.C. § 727(a)

Although Plaintiffs' Complaint does not specify the Code sections it relies on for denial of discharge, its allegations track the language in §§ 727(a)(2)(A), (a)(3), (a)(4), and (a)(6)(A), which provide as follows:

> (a) The court shall grant the debtor a discharge, unless—
> …
> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated or concealed—
> (A) property of the debtor, within one year before the date of the filing of the petition;
> …
> (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;
> (4) the debtor knowingly and fraudulently, in or in connection with the case—
> (A) made a false oath or account;
> (B) presented or used a false claim; [or]
> …
> (D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs;
> …
> (6) the debtor has refused, in the case—
> (A) to obey any lawful order of the court, other than an order to respond to a material question or to testify[.]

11 U.S.C. § 727(a). [9]

---

[9] Plaintiffs' Response expressly identifies § 727(a)(3) and (4)(A), but recites the language of all subsections of § 727(a) identified herein. [Doc. 12 at 8-10].

The parties did not provide separate arguments for each relevant subsection of § 727(a). Plaintiffs generally argue that Defendant was ordered to provide certain documents in connection with his 2004 examination, including bank records and documentation relating to any loans in the four years prior to bankruptcy. The bank records provided by Defendant contained significant gaps, and Defendant provided no loan documents. During the examination, an issue arose regarding Defendant's income with respect to whether handwritten checks from his employer were loans or income. Although Defendant agreed to address the deficiencies in his documents, neither the loan documents nor the missing bank records have ever been provided.

Defendant generally contends the Complaint makes conclusory speculations about Defendant's inability to provide all the documentation requested by Plaintiffs. The motion for 2004 examination of Defendant requested a laundry list of items that Defendant in good faith attempted to provide. The mere fact that Defendant was unable to provide all the documents does not support denial of discharge.

### 1. Fraudulent Prepetition Transfer: § 727(a)(2)(A)

To state a claim for objection to discharge under § 727(a)(2)(A), Plaintiffs must allege sufficient facts to show: "(1) that the act complained of was done within one year prior to the date the petition was filed, (2) with actual intent to hinder, delay, or defraud a creditor, (3) that the act was that of the debtor, and (4) that the act consisted [of] transferring, removing, destroying, or concealing any of the debtor's property." *Jennings v. Maxfield (In re Jennings)*, 533 F.3d 1333, 1339 (11th Cir. 2008).

Defendant filed his bankruptcy case on September 30, 2016. The Court is unable to locate in the Complaint any allegations regarding the transfer, removal, destruction, or concealment of Debtor's property that occurred within one year of the petition date. The

Complaint does allege Debtor failed to turn over bank records for part of the one-year period prior to the petition date. However, it does not allege facts from which the Court can reasonably infer that the bank records contain otherwise undisclosed information about Debtor's assets and that the failure to provide the records was an act of intentional deception by Debtor. Therefore, Plaintiffs have failed to state a claim under § 727(a)(2)(A), and Defendant is entitled to dismissal of Count VI to the extent it seeks relief under § 727(a)(2)(A).

### 2.  Concealment of Financial Records: § 727(a)(3)

To state a claim for objection to discharge under § 727(a)(3), Plaintiffs must allege sufficient facts to show that: "(1) the debtor failed to keep or preserve adequate records, and; (2) that such failure makes it impossible to ascertain the debtor's financial condition." *Bank of Am. v. Seligman (In re Seligman)*, 478 B.R. 497, 504 (Bankr. N.D. Ga. 2012) (Ellis-Monro, J.) (citing *Menotte v. Moore (In re Moore)*, 375 B.R. 696, 702 (Bankr. S.D. Fla. 2007)). The debtor's duty under the statute is to keep records appropriate to his circumstances. *Id.*

The Complaint alleges Defendant failed to produce (1) documentation regarding a loan from his employer; and (2) complete bank records for the periods of January 2014 through November 2014, May 2015 through December 2015, and January 2016 through May 2016. This is a close question due to the lack of specificity regarding the missing documents. However, Plaintiff has alleged enough facts for the Court to reasonably infer that Plaintiffs' inability to view the unproduced documents made it impossible to ascertain Defendant's financial condition, especially as to the loan documents which affect the balance of Defendant's assets and liabilities. As such, Plaintiffs have stated a claim under § 727(a)(3), and Defendant is not entitled dismissal of Count VI to the extent it seeks relief under § 727(a)(3).

### 3. False Oath or Withholding Financial Information: § 727(a)(4)

Section 727(a)(4) applies to conduct of the debtor in connection with the bankruptcy case. Plaintiffs rely on three subsections of § 727(a)(4), those dealing with false oaths, false claims, and withholding information about the debtor's financial affairs or property.

### a. False Oath: § 727(a)(4)(A)

To state a claim for objection to discharge under § 727(a)(4)(A), Plaintiffs must allege sufficient facts to show Defendant made a false oath in connection with the case that is fraudulent and material. *Seligman*, 478 B.R. at 504 (citing *Swicegood v. Ginn*, 924 F.2d 230, 232 (11th Cir. 1991)). A false oath, which includes omissions from the schedules and statement of financial affairs, is material when "'it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property.'" *Id.* (quoting *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 618 (11th Cir. 1984)). Fraudulent intent may be inferred from the circumstances. *Id.*

The Complaint does not clearly identify what statements by Defendant in connection with the bankruptcy case constitute false oath. The Complaint alleges Defendant's statement of financial affairs showed he earned $19,648 in 2016, $14,000 in 2015, and 30,000 in 2014. Plaintiffs further allege that at the 2004 examination, Defendant produced a 2013 tax return showing his 2013 wage income to be $19,112 and acknowledged having received an additional $18,593.20 from his employer. Defendant claimed the extra money was a loan. Two months prior to the 2004 examination, but after the order allowing the examination was entered, Debtor amended his Schedule F to include his employer with a debt of $47,000. The Complaint further alleges that Plaintiffs believe Defendant is hiding his true income, but offers no factual basis to question the amounts disclosed in the statement of financial affairs.

If Plaintiffs are relying on the employer loan as a basis for their claim, while scanty, their allegations are sufficient to plausibly state a claim under § 727(a)(4)(A). Taken as true, the allegation that Defendant failed to provide documentary support for the employer loan, that was scheduled only after an order for 2004 examination was entered, allows the Court to reasonably infer that the loan scheduled by Defendant may not exist. Thus, Plaintiffs have stated a claim for false oath, and to the extent the Complaint seeks relief under § 727(a)(4)(A), Defendant is not entitled to dismissal of Count VI.

### b. False Claim: § 727(a)(4)(B)

To state a claim for objection to discharge under § 727(a)(4)(B), Plaintiffs must allege sufficient facts to show Defendant presented a false claim in the bankruptcy case. The "claim" in § 727(a)(4)(B) generally refers to "bankruptcy 'claims' as defined in 11 U.S.C. § 101(5) (i.e., rights to payments) rather than assertions, representations, and statements." *Jackson v. Jackson (In re Jackson)*, 548 B.R. 353, 385 (Bankr. N.D. Ga. 2016) (Bonapfel, J.) (citations omitted). Thus the question is whether Defendant engaged in conduct such as scheduling non-existent debts, inflating the amount of debts, or filing false proofs of claim. *See Parnes v. Parnes (In re Parnes)*, 200 B.R. 710, 722 (Bankr. N.D. Ga. 1996) (Bihary, J.).

The only allegations that appear related to a claim under § 727(a)(4)(B) are that Defendant amended his Schedule F to include his employer as an unsecured creditor with a debt of $47,000. Later, at Defendant's 2004 examination, Defendant acknowledged receiving non-wage money from his employer that constituted loans. And, Defendant later failed to produce any documentation regarding the loans. As indicated above, these allegations are sufficient to plausibly state a claim under § 727(a)(4)(B), because the Court can reasonably infer that the loan

scheduled by Defendant may not exist. Therefore, to the extent the Complaint seeks relief under § 727(a)(4)(B), Defendant is not entitled to dismissal of Count VI.

### c. Withholding Recorded Information: § 727(a)(4)(D)

To state a claim for objection to discharge under § 727(a)(4)(D), Plaintiffs must allege sufficient facts to show Defendant withheld recorded information. In addition, "[t]he recorded information must be withheld from an officer of the estate, typically the trustee, entitled to possession of it pursuant to the Bankruptcy Code." *Eastern Diversified Distrib., Inc. v. Matus (In re Matus)*, 303 B.R. 660, 679 (Bankr. N.D. Ga. 2004) (Mullins, J.); *White v. White (In re White)*, No. 14-65320, AP No. 14-5331, 2017 WL 1058201, at *11 (Bankr. N.D. Ga. March 20, 2017) (Hagenau, J.) (for § 727(a)(4)(D) to apply "the plaintiff must present evidence that the trustee requested the applicable information").

While the Complaint alleges that Defendant failed to produce all the records requested by Plaintiffs pursuant to a 2004 examination, it does not allege that Defendant withheld any information requested by the Trustee or other officer of the estate. Therefore, Plaintiffs have failed to state a claim for relief under § 727(a)(4)(D), and Defendant is entitled to dismissal of Count VI to the extent it seeks relief under § 727(a)(4)(D).

### d. Failure to Obey a Court Order: § 727(a)(6)(A)

To state a claim under 727(a)(6)(A), Plaintiffs must allege sufficient facts to show Defendant "willfully and intentionally refused to obey a court order." *The Cadle Co. v. Parks-Matos (In re Matos)*, 267 Fed. Appx. 884, 886 (11th Cir. 2008) (citing *Farouki v. Emirates Bank Intern., Ltd.*, 14 F.3d 244, 249 (4th Cir.1994)). "[A] mere failure to obey the order, resulting from inadvertence, mistake, or inability to comply, is insufficient[.]" *Id.* Plaintiffs "must demonstrate some degree of volition or willfulness on the part of the debtor." *Id.*

24

The Complaint alleges Defendant failed to provide loan documentation and complete bank records requested as part of the order authorizing the 2004 examination. However, these allegations alone are not enough to state a plausible claim that the failure to obey a court order was willful and intentional. As in *Trauner v. Burrowes (In re Burrowes)*, No. 10-91876, AP No. 11-5254, 2011 WL 5035975 (Bankr. N.D. Ga. Oct. 13, 2011) (Hagenau, J.) (denying motion for default judgment), the Complaint does not allege and the record does not reflect that Plaintiffs filed a motion to compel the unproduced documents or sought sanctions for the failure to produce. *Id.* at *3. "While not necessarily required, such steps would have buttressed [Plaintiffs'] claim that the Debtor has refused to obey an order of the Court." *Id.* Furthermore, Plaintiffs have not alleged any facts indicating the Defendant has the documents at issue or has access to those documents but is refusing to turn them over. Therefore, Plaintiffs have failed to state a claim, and Defendant is entitled to dismissal of Count VI to the extent it seeks relief under § 727(a)(6)(A).

## VI. CONCLUSION

Defendant's Motion seeks dismissal of Counts I, II, III, and VI of Plaintiffs' Complaint. Plaintiffs have failed to state a claim for relief under § 523(a)(5) and (a)(15) in Counts I and II because they have failed to allege facts showing the debt at issue is a DSO or was incurred in connection with a divorce proceeding. Therefore, the Court will grant Defendant's Motion as to Counts I and II of the Complaint. Plaintiffs have also failed to state a claim for relief under § 727(a)(2)(A), (a)(4)(D), and (a)(6) in Count VI based primarily on Defendant's failure to produce complete bank records and loan documentation without any factual basis from which the Court can infer that the failure was in any way fraudulent, deceptive, or otherwise indicative of the type of bad faith conduct governed by § 727(a). Therefore the Court will grant

Defendant's Motion as to Count VI of the Complaint to the extent it seeks relief under § 727(a)(2)(A), (a)(4)(D), and (a)(6).

Plaintiffs have alleged sufficient facts to state a claim for relief in Count III under § 523(a)(6) that the debt was incurred as a result of willful and malicious injury against Plaintiffs or their property. Plaintiffs have also alleged sufficient facts to state a claim for relief in Count VI under § 727(a)(3), (a)(4)(A) and (a)(4)(B) due to Defendant's failure to produce certain financial documents. Therefore, the Court will deny Defendant's Motion as Count III of the Complaint and as to Count VI of the Complaint to the extent is seeks relief under § 727(a)(3), (a)(4)(A) and (a)(4)(B). For the foregoing reasons, it is

ORDERED that Counts I and II of the Complaint, and claims under § 727(a)(2)(A), (a)(4)(D), and (a)(6) of Count VI of the Complaint are DISMISSED; it is further

ORDERED that Plaintiffs shall have 14 days from the entry of this Order to file an amended complaint that addresses the deficiencies in Counts I, II, and VI. Defendant shall have 14 days thereafter to file a responsive pleading.

**END OF ORDER**

## **Distribution List**

Ian M Falcone
The Falcone Law Firm PC
363 Lawrence Street
Marietta, GA 30060

Landa Crowder
Stanley Crowder
521 Blackberry Run Trail
Dallas, GA 30132

Amy Riley
721 Bent Leaf Drive
Dallas, GA 30132

Karen King
King & King Law LLC
215 Pryor Street
Atlanta, GA 30303

Phillip Russell Wilbur, Jr.
3104 Superior Dr.
Dacula, GA 30019